UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ANTHONY C.[1], ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO.  2:21cv8 |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) as provided for in the Social Security Act. 42 U.S.C. § 423(a).  Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2

2. The claimant has not engaged in substantial gainful activity since November 9, 2018, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except The claimant has the residual functional capacity to perform the full range of light work [sic], except he can frequently reach, handle, and finger. He can occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, and crouch. He can never climb ladders, ropes, or scaffolds, never crawl, never work at unprotected heights, never around dangerous machinery with moving mechanical parts, and never operate a motor vehicle as part of his work-related duties. Every 60 minutes, he must be allowed to shift positions or alternate between sitting and standing for one to two minutes at a time while remaining on task. He occasionally uses a medically necessary cane while walking.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 10, 1970 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 9, 2018, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 18-24).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on December 21, 2021. On February 1, 2022, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on March 3, 2022. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

On February 16, 2018, Plaintiff presented to Dr. Virkam Sobti of Munster MRI and

Imaging. (Tr. 287). Dr. Sobti obtained MRI imaging and other images of the Plaintiff. *Id*. Dr. Sobti found that Plaintiff had an annular bulge with superimposed posterior central herniation at L5-S1. (Tr. 289). Dr. Sobti also found posterior herniation at L4-5, L3-4, and L2-3. (Tr. 290).

On April 12, 2018, Plaintiff presented to Dr. Sheel Patel of Centers for Pain Control. Dr. Patel found that Plaintiff had pain in neck and shoulders, numbness, tingling in upper extremities and through the hands. (Tr. 281). Dr. Patel further found that plaintiff had thoracic pain with several years duration, without history of trauma. *Id*. Dr. Patel diagnosed Plaintiff with degenerative disc disease of the cervical and lumbar spine. (Tr. 284).

On May 4, 2018, Plaintiff visited Dr. Patel for a cervical interlaminar epidural procedure. (Tr. 297). On May 23, 2018, Dr. Patel prescribed Plaintiff Norco, and amitriptyline. (Tr. 300). Dr. Patel noted Plaintiff had received interventional treatment using diagnostic blocks, the reason for this treatment was for chronic and severe pain, "at times causing severe functional limitations." *Id*.

On December 10, 2018, Plaintiff presented to Dr. Alicia M. Belcher of Advanced Pain & Rehab. (Tr. 312). Plaintiff stated his pain was getting better with physical therapy and medication, but with the medication Plaintiff was not permitted to drive, operate any machinery, or return to work at this time. (Tr. 313). On April 2, 2019, Dr. Barry Ring of Advanced Pain & Rehab allowed Plaintiff to return to work, but he could not drive due to his medication. (Tr. 332).

On June 7, 2019, Dr. Belcher observed bilateral straight leg raise testing, diminished grip strength, and numbness in the bilateral hands. (Tr. 360). Grip weakness was likewise observed throughout the record on exam. (Tr. 365, 375, 385, 390).

On June 25, 2019, Plaintiff was admitted to the Franciscan Health Munster emergency

5

room. (Tr. 345). Dr. Kathleen M. Starr stated Plaintiff had drove himself to the emergency room from work due to severe pain, and that his prescribed medication was not working. (Tr. 346, 351). Plaintiff was given orphenadrine, ketorolac, and hydrocodone-acetaminophen. (Tr. 351).

On November 7, 2019, Plaintiff presented to Dr. Mark K. Chang of Midwest SpineCare. (Tr. 394). Dr. Chang found Plaintiff to have mild neurological problems with right arm and both legs that were consistent with nerve impingement and consistent with MRI imaging. *Id*. Dr. Chang stated Plaintiff would not like any surgeries for the time being, and that he is permanently disabled. *Id*.

On November 24, 2019, Plaintiff presented to Dr. Samar Kassar of Midwest Neurology. (Tr. 398). On examination, Dr. Kassar observed abnormal musculoskeletal range of motion, "abnormal motor, " abnormal gait, lower extremity weakness, upper extremity weakness, diminished sensation, tremor, positive Romberg test, and absent deep tendon reflexes. *Id*.

On February 21, 2020, Dr. Chang completed a Physical Residual Functional Capacity Questionnaire. (Tr. 401). Dr. Chang stated Plaintiff had "neck pain, right arm pain, weakness, lower back pain, bilateral leg pain [and] weakness". *Id*. Dr. Chang stated Plaintiff suffered "[d]izziness, [d]rowsiness, [and] difficulty with concentration" as side effects from his medication. *Id*. Dr. Chang stated Plaintiff could only use his right hand, fingers, and arm fifty-percent of an 8-hour work day. (Tr. 403).

On February 24, 2020, Dr. Brian Cassani of Advanced Chiropractic Care treated plaintiff with electrical muscle stimulation, cryotherapy and convectional heat therapy for his pain. (Tr. 405, 406). Dr. Cassani found Plaintiff suffered from tingling and numbness in addition to pain. (Tr. 405).

In March of 2020, Plaintiff presented to Advanced Pain and Rehab. (Tr. 435). Examination indicated positive bilateral straight leg raise testing. *Id*.

In support of remand, Plaintiff first argues that the ALJ erred in his determination that Plaintiff's combined impairments did not meet or medically equal Listing 1.04A. At Step Three, an ALJ is required to determine whether the claimant meets or equals any of the listed impairments found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, Appendix 1; 20 C.F.R. § 404.1520(a)(4)(iii). For each listed impairment, there are objective medical findings and other specific requirements which must be met to satisfy the criteria of that Listing. 20 C.F.R. §§ 404.1525(c)(2)-(3), 416.925(c)(2)-(3). When a claimant satisfies all such criteria, that person is deemed presumptively disabled and entitled to benefits. 20 C.F.R. §§ 404.1525(a), 416.925(a), 404.1525(c)(3) and 416.925(c)(3).

Even if a claimant's impairment does not satisfy each requirement of the specified elements of the listing, it can result in a finding of disability if the record contains "other findings related to [the] impairment that are at least of equal medical significance to the required criteria" or if "the findings related to [a combination of] impairments are at least of equal medical significance to those of a listed impairment." 20 C.F.R. §§ 404.1526, 416.926. "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). The Seventh Circuit has held that "the ALJ may rely solely on opinions given in Disability Determination and Transmittal forms and provide little additional explanation only so long as there is no contradictory evidence in the record.*" Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006).

In the present case, the ALJ discussed the Listings as follows:

Despite the claimant's severe impairments, the undersigned finds that the claimant has not satisfied the narrow definition of a listed impairment as set forth in Appendix 1, Part 404, Subpart P of Regulation No. 4, nor do his impairments equal in severity a listed impairment. Listing 1.04 requires the presence of a compromise of a nerve root or the spinal cord. Furthermore, even if there was evidence of nerve root compromise, the claimant does not show motor loss, muscle weakness, sensory or reflex loss. The record also does not reveal spinal arachnoiditis with a need to change position or posture more than once every two hours or lumbar stenosis with an inability to ambulate effectively. The claimant has not met their burden of presenting medical evidence that supports such a finding.

While the claimant has been noted with some spinal cord compromise, it has been characterized as no more than "moderate" (Ex. 1F, 4, 7-10; 6F). Also, while at some examinations the claimant has been described with reduced functioning, at others he has been described with intact sensation and gait (Ex. 1F, 3-4; 7F, 3 compared with 5F, 7-10; 10F, 2-5, 27-30). He was described with a positive bilateral straight leg raise test at one point, but it was not specified if it was from sitting and supine position, as required by the listing (Ex. 1F, 4). The claimant has alleged the use of cane, but there is only a single instance of him possibly being noted using one (Ex. 10F, 5). In his opinion, Dr. Chang did not indicate that the claimant must use a cane or other assistive device (Ex. 8F, 2). However, considering the claimant's allegations in the light most favorable to the claimant, the undersigned finds that the claimant must occasionally use a cane while walking.

Listing 1.01 (impairments of the musculoskeletal system) has as one of the requirements to meet or equal this Listing, an "inability to ambulate effectively." The term ambulate means to walk. Social Security looks at whether a person needs to walk by using either a walker or a cane in each hand. If that person does need a walker or two canes, then generally, that person will be found to have issues with walking effectively. The reasoning has little to do with the act of walking but rather with the need to use both hands to hold onto the canes or the walker. The use of a single cane (one point or a quad cane) or a wheelchair does not preclude the use of both hands and therefore would not mean, by itself, that the person has an issue walking.

(Tr. 18-19). Listing 1.04 states:

**1.04 Disorders of the spine** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral

8

>fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
>B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
>C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Plaintiff argues that he meets Listing 1.04A, only. Plaintiff contends that the medical evidence shows that he has spinal cord compromise, and that Dr. Chang concluded his nerve impingement was severe enough to render Plaintiff permanently disabled. (Tr. 394). Plaintiff further argues that the evidence showed he had neuroanatomic distribution of pain evidenced by radiating pain into the upper lower extremities and diagnoses of radiculopathy (Tr. 361, 371, 381, 392, 394, 411, 416, 421, 426, 436); limited and painful range of motion of the lumbar spine and guarded cervical mobility (Tr. 359-60, 369-70, 371, 374-75, 384-85, 386, 397-98); motor loss via demonstration of lower extremity weakness, positive Romberg, abnormal gait, and weakness in the upper extremities (Tr. 360, 365, 375, 385, 390, 397-98); numbness and absent sensation in the extremities as demonstrated through clinical examination (Tr. 281, 360, 397-98, 405); absent and abnormal deep tendon reflexes (Tr. 397-98); and multiple instances of positive, bilateral straight leg raises (Tr. 360, 365, 375, 385, 390, 435).

The Commissioner, however, argues that Dr. Chang's opinion that Plaintiff has "nerve impingement" does not satisfy Listing 104A's requirement that he have a "nerve root compression". The Commissioner claims that a nerve root is distinct from a nerve, and compression is distinct from impingement.[2] The Commissioner also claims that Dr. Chang's opinions are contradictory as he stated there was "no significant nerve impingement", but that there was "nerve impingement as seen on the MRI images". (Tr. 394, November 7, 2019 visit). However, Dr. Chang specifically stated that with respect to L1-4, the MRI showed no significant nerve impingement. But that Plaintiff's neurological problems with right arm and both legs was consistent with nerve impingement as seen on the MRI images. Which leads to the impression that although there was no significant nerve impingement at L1-4, there was nerve impingement elsewhere along the spine. Dr. Chang's opinion corroborates this impression as he stated that plaintiff has "chronic right C6 and C7 radiculopathy". (Tr. 394). Radiculopathy is another name for a compressed nerve root. The Commissioner points out that on May 23, 2018, Dr. Patel opined that "it is clear that the patient currently has no nerve root compression/irritation...". (Tr. 300). However, this was before Plaintiff's onset date of November 9, 2018.

Clearly, the above discussion leads to the conclusion that the ALJ needs to reconsider whether Plaintiff meets Listing 104A. Plaintiff has presented evidence which, at least arguably, shows he could meet the Listing. Thus a more precise and in-depth analysis of Plaintiff's medical evidence is required on remand.

Next, Plaintiff agues that the ALJ improperly assessed Dr. Chang's opinion as to

---

[2] Plaintiff hotly contests this last point and cites to the websites of the Mayo Clinic and the Cleveland Clinic for the proposition that a nerve impingement (*i.e.* pinched nerve) is the same thing as a compressed nerve, as it is the compression that causes the impingement.

10

Plaintiff's functional limitations. Plaintiff points out that Dr. Chang was the only doctor to actually review the most recent lumbar and cervical spine MRIs. Dr. Chang opined that the etiology demonstrated on Plaintiff's most recent lumbar and cervical spine MRIs rendered him "permanently disabled." (Tr. 394). More specifically, he opined that Plaintiff's spinal etiology would result in "radiculopathy" and "radiating pain" that would limit him to sitting, standing and walking less than two hours per eight-hour work day. (Tr. 402). He opined that Plaintiff's pain would constantly interfere with his concentration; that he would have to lie down twice per day due to pain; that he could rarely lift ten pounds and never lift more; that he could use his right hand for handling and fingering only 50% of an eight-hour work day; and that he would be absent more than four days per month. (Tr. 402-404).

Plaintiff points out that Dr. Chang very clearly concluded, after review of Plaintiff's most recent MRI, that the etiology demonstrated an impingement of nerve roots and L5 radiculopathy which rendered him "permanently disabled" due to the pain which radiated into all of his extremities. Yet the ALJ found the opinions of the state agency reviewing physicians persuasive, even though they had no knowledge of the MRI which Dr. Chang opined rendered Plaintiff "permanently disabled." Plaintiff argues that if the ALJ did not trust the treating orthopedic specialist's interpretation of the medical imaging, he should have subjected it to the scrutiny of an agency-contracted medical expert. Plaintiff reiterates that the 2019 MRI was new evidence which, for the first time, demonstrated etiology he believes is commensurate with a listing of presumptive disability, and a treating orthopedic surgeon interpreted that etiology to cause disabling limitations. (Tr. 394, 402-404). This Court agrees with Plaintiff that remand is warranted so that the ALJ can re-assess the medical evidence and opinions and obtain the

additional opinion of a medical expert to review the MRIs and other relevant evidence relating to Plaintiff's spinal impairments.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: March 7, 2022.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court